IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RICARDO DELGADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-492-KC |
| | § | |
| UPS GROUND FREIGHT, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day, the Court considered Plaintiff Ricardo Delgado's "Motion to Remand" ("Motion"), ECF No. 2.  After due consideration, the Court **GRANTS** in part and **DENIES** in part the Motion.

**I.    BACKGROUND**

Plaintiff was formerly an employee of Defendant United Parcel Service, Inc. ("UPS" or "Defendant").  Notice of Removal Ex. 1 ("Complaint") 3, ECF No. 1-5.[1]  Plaintiff drove large tractor-trailer trucks for UPS.  Mot. Ex. A ("Deposition") 69:15-21, ECF Nos. 2-1, 2-2.

On July 24, 2008, Plaintiff was driving his usual route from El Paso, Texas, to Bowie, Arizona, and then back to El Paso, Texas.  *See* Compl. 3; Dep. 71:15-72:3, 80:15-22.  The trip started at about ten at night and ended at eight in the morning.  Dep. 81:10-18.  But on that night, at about three in the morning, Plaintiff's truck hit the median and then rolled over.  Dep. 77:3-8.  Emergency personnel responded and airlifted Plaintiff to Thomason Hospital in El Paso.  *See*

---

[1] To assist the reader in finding citations, the Court references the page numbers that the CM/ECF docketing system generated.

Compl. 3.

After the accident, Plaintiff had pain in his lower back and left shoulder. Compl. 3. Plaintiff sought medical care, received therapy, and attended a chronic pain management program. Compl. 3. While Plaintiff recovered, he was unable to work and filed a workers' compensation claim. *See* Compl. 3; Dep. 110:14-19, 112:13-20.

On August 7, 2008, Defendant fired Plaintiff. *See* Compl. 3. According to Defendant, UPS fired Plaintiff because the accident was an offense of "extreme seriousness." Def. UPS Ground Freight, Inc.'s Resp. to Pl.'s Mot. to Remand ("Response") 1, ECF No. 3. Defendant explains that the collective bargaining agreement ("CBA") between UPS and its employees provides that UPS may fire an employee for an offense of "extreme seriousness." Resp. 1. The relevant provision states:

> Employees shall not be disciplined, suspended or discharged except for just cause. Except for offenses of extreme seriousness, employees shall be subject to progressive discipline, which shall require the Company to give at least one (1) advanced warning notice of the complaint(s) against the employee to the employee in writing with a copy of the same or of the same statement to the Local Union.

Resp. 1.

On January 22, 2010, Plaintiff filed this lawsuit alleging that Defendant wrongfully discharged Plaintiff in violation of Texas Labor Code section 451.001. Compl. 4. Specifically, Plaintiff alleges that Defendant fired him in retaliation for filing a workers' compensation claim. *See* Compl. 4.

On October 27, 2011, Defendant deposed Plaintiff. Resp. 2. During the deposition, Plaintiff stated that his supervisor complained to him about how much the company was spending on his medical bills and other expenses. Dep. 103:3-104:22, 122:23-123:8, 158:1-

159:4; 173:18-174:1.  Based on his supervisor's statements, Plaintiff believes UPS fired him in retaliation for filing the workers' compensation claims.  *See id.*

Towards the end of the over five hour deposition, Defendant's lawyer handed Plaintiff a copy of the CBA and had Plaintiff read the section about discharges for "offenses of extreme seriousness."  *See* Dep. 1, 203:20-206:6.  A few minutes later, Defendant's lawyer asked Plaintiff whether "[a]s part of your lawsuit, Mr. Delgado, are you claiming that UPS didn't comply with or violated this article 6 provision of the CBA?"  Dep. 208:3-5.  Plaintiff answered "yes."  Dep. 208:7.

On November 22, 2011, Defendant removed the case to this Court citing federal question jurisdiction.  Mot. 2.  On December 22, 2011, Plaintiff filed this Motion requesting that the Court remand this case back to state court.  Mot. 1.

## II. DISCUSSION

### A. Standard

A defendant may remove an action from state court to federal court if the federal court possesses subject matter jurisdiction.  *See* 28 U.S.C. § 1441(a).  The removing party, as the party seeking the federal forum, must show that federal jurisdiction exists and that removal is proper. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  In evaluating jurisdiction, "any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Id.*

### B. Plaintiff's Motion to Remand

Plaintiff argues that the Court should remand this case to state court because the Court lacks subject matter jurisdiction.  Mot. 1.  Specifically, Plaintiff argues that his retaliatory

discharge claim should remain in state court because the claim arises under Texas's workers' compensation laws. *See* Mot. 10. Defendant opposes the Motion and argues that the Court has federal question jurisdiction because § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts Plaintiff's claim. Notice of Removal 3-4, ECF No. 1; Resp. 3. Specifically, Defendant argues that Plaintiff's retaliatory discharge claim is inextricably intertwined with the CBA. Resp. 1, 6-7. The Court first examines the removal rules, then analyzes whether § 301 preempts Plaintiff's claim, and finally determines whether remand is appropriate.

        **1.**     **Removal of workers' compensation claims**

By statute, a defendant generally may not remove a case "arising under" state workers' compensation law to federal court. 28 U.S.C. § 1445(c); *Trevino v. Ramos*, 197 F.3d 777, 781 (5th Cir. 1999) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1118 (5th Cir. 1998)); *Jones v. Roadway Express*, 931 F.2d 1086, 1091 (5th Cir. 1991) ("*Roadway I*"). The relevant statute, 28 U.S.C. § 1445, states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). "This section 'reflects a strong congressional policy that where the state court has been utilized by one of the parties in the state compensation machinery, the case should remain in the state court for its ultimate disposition.'" *Trevino*, 197 F.3d at 781 (quoting *Kay v. Home Indem. Co.*, 337 F.2d 898, 902 (5th Cir. 1964)). Because of this strong congressional policy, the Fifth Circuit has concluded that "[w]orkmen's compensation cases 'have little real business in a federal court.'" *Id.* (quoting *Kay*, 337 F.2d at 901). Therefore, if a party timely challenges an improper removal of a workers' compensation case, the federal court

should remand the case back to state court. *Roadway I*, 931 F.2d at 1092-93.

In this case, Plaintiff brings his claim under Texas Labor Code section 451.001. Compl. 4. Section 451.001 mandates that "[a] person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." Tex. Lab. Code Ann. § 451.001 (West 2006). The Fifth Circuit has held that section 451.001 arises under Texas's workers' compensation laws because the law enables workers to exercise their right to file workers' compensation claims without fear of retaliation. *Roadway I*, 931 F.2d at 1092 (analyzing Tex. Rev. Civ. Stat. Ann. art. 8307c § 1 that is now codified at Tex. Lab. Code Ann. § 451.001). Given that section 451.001 arises under Texas's workers' compensation laws, Plaintiff's claim under section 451.001 is presumptively not removable. *See* 28 U.S.C. § 1445(c); *Trevino*, 197 F.3d at 781; *Roadway I*, 931 F.2d at 1092.

However, there is an exception that allows removal of workers' compensation claims to federal court. A defendant can remove a workers' compensation claim if federal law entirely preempts plaintiff's state law claim. *See Trevino*, 197 F.3d at 779-80; *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 278 (5th Cir. 1994). The defendant bears the burden of proving that federal law preempts the state law claim. *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1179 (11th Cir. 2010).

In this case, Defendant argues § 301 of the LMRA preempts Plaintiff's claim. Resp. 5-7. Accordingly, the Court next examines whether Defendant has established that § 301 preempts Plaintiff's retaliatory discharge claim under section 451.001.

### 2. Section 301 preemption

Section 301 of the LMRA states:

> For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

28 U.S.C. § 1445(c). Although the text of this statute does not address preemption, the Supreme Court has held that § 301 creates a federal body of law that preempts state law when a party seeks to enforce a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403-04 (1988) (*citing Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)); *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 442-43 (5th Cir. 2010). The rationale is that the country needs uniform rules on interpreting collective bargaining agreements to "to promote the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404.

However, § 301 does not preempt "every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985); *Espinoza*, 622 F.3d at 443. Rather, § 301 only preempts a state law claim if the state law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers*, 471 U.S. at 213; *Espinoza*, 622 F.3d at 443.

To determine if a state law claim is inextricably intertwined with the collective bargaining agreement, the court must examine the elements of the state law claim. *See Lingle*, 486 U.S. at 407; *Espinoza*, 622 F.3d at 443 (citing *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996) (per curiam)). For example, in a negligence claim, the court examines the

elements of duty, breach, causation, and damages. *See Espinoza*, 622 F.3d at 443-44. A negligence claim may thus be inextricably intertwined with the collective bargaining agreement if, for example, the collective bargaining agreement defines the scope of the legal duty. *See id.* at 444. That is so because the court must interpret the collective bargaining agreement to determine the actual extent of the legal duty and whether there was a breach of that duty. *See id.* at 444.

In this case, Plaintiff brings a retaliatory discharge claim under Texas Labor Code section 451.001. Compl. 4. The elements of a section 451.001 retaliatory discharge claim are: (1) an employee; (2) is discharged or discriminated against in any manner; (3) because the employee has filed a workers' compensation claim in good faith; and (4) that but for the employee's filing of a workers' compensation claim, the discharge or discrimination would not have occurred when it did. *See* Tex. Lab. Code Ann. § 451.001; *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 336 (S.D. Tex. 2011) (quoting *Willis v. Nucor Corp.*, 282 S.W.3d 536, 543 (Tex. App. 2008)). The last element of causation requires a "causal connection" or "causal link" between the alleged discrimination and the filing of the workers' compensation claim. *Reid*, 805 F. Supp. 2d at 336 (quoting *Willis*, 282 S.W.3d at 543-44). Although the plaintiff must prove causation, the "plaintiff does not need to prove that he was discharged *solely* because of his proceeding with his workers' compensation claim; he need prove only that his claim was a determining factor in his discharge." *Roadway I*, 931 F.2d at 1090 (emphasis added); *Reid*, 805 F. Supp. 2d at 337 (quoting *Willis*, 282 S.W.3d at 544).

The Supreme Court in *Lingle* examined a similar retaliatory discharge statute, and determined that the plaintiff's retaliatory discharge claim was not inextricably intertwined with the collective bargaining agreement. 486 U.S. at 407. The Supreme Court noted that Illinois'

retaliatory discharge statute required the plaintiff to show that "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Id.* (quoting *Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1356 (7th Cir 1985) and citing *Gonzalez v. Prestress Eng'g Corp.*, 503 N.E.2d 308 (Ill. 1986)). The Supreme Court unanimously held that each of these elements focused on the conduct of the employee and employer, and did not require "a court to interpret any term of a collective-bargaining agreement." *Id.*; *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 266 (1994) (applying similar reasoning to preemption under the Railway Labor Act, 45 U.S.C. § 151 et seq.). Accordingly, the plaintiff's claim was not inextricably intertwined with the collective bargaining agreement and thus § 301 did not preempt the plaintiff's state law retaliatory discharge claim. *See id.*

In addition to the Supreme Court, the Fifth Circuit has on several occasions specifically examined whether § 301 preempts a retaliatory discharge claim under section 451.001. In *Roadway I*, the Fifth Circuit held that the plaintiff's retaliatory discharge claim was not inextricably intertwined with the collective bargaining agreement because the critical issue was whether the employer retaliated against the employee for filing a workers' compensation claims. *Roadway I*, 931 F.2d at 1090. And the court explained that the trial court did not need to examine the collective bargaining agreement to determine whether the employer retaliated. *Id.* Thus, the Fifth Circuit concluded that § 301 did not preempt plaintiff's claim. *Id.* at 1090-91.

In support of its holding, the Fifth Circuit explained that a defendant could use the collective bargaining agreement as a defense — e.g. that the collective bargaining agreement

8

justified the firing. *See id.* at 1090. But using the collective bargaining agreement as a defense was not enough to make Plaintiff's claim "inextricably intertwined" with interpreting the collective bargaining agreement. *See id.*; *see also Williams v. Nat'l Football League*, 582 F.3d 863, 879 & n.13 (8th Cir. 2009) ("[D]efenses to liability . . . are not relevant to our section 301 analysis"); *Jones v. Roadway Express, Inc.*, 936 F.2d 789, 791-92 (5th Cir. 1991) ("*Roadway II*") (rejecting that the defendant's reliance on the collective bargaining agreement as a defense necessitates federal preemption). The court explained that the collective bargaining agreement was not "inextricably intertwined" because the employer's actions could be entirely justified by the collective bargaining agreement and yet still be unlawful because "retaliation was a factor." *See Roadway I*, 931 F.2d at 1090. Moreover, the Fifth Circuit insisted that "we do not require that the [collective bargaining agreement] be irrelevant to the dispute; either party may still use the [collective bargaining agreement] to support the credibility" of its arguments. *Roadway I*, 931 F.2d at 1090.

In a more recent case, the Fifth Circuit again held that a plaintiff's retaliatory discharge claim under section 451.001 was not inextricably intertwined with an interpretation of the collective bargaining agreement. *Trevino*, 197 F.3d at 781 (1999). The court applied the same reasoning — namely, that the critical question was whether the defendant fired the plaintiff in retaliation for filing workers' compensation claims, and the answer to that question was "not dependant on an interpretation" of the collective bargaining agreement. *Id.*

Despite the seemingly straightforward analysis explained above, there are certain unique factual situations when a retaliatory discharge claim under section 451.001 is inextricably intertwined with the collective bargaining agreement, and thus preempted by § 301 of the

9

LMRA.  *See Thomas v. LTV Corp.*, 39 F.3d 611, 621 (5th Cir. 1994); *Medrano v. Excel Corp.*, 985 F.2d 230, 233-34 (5th Cir. 1993).  Although this analysis is quite fact specific, the case law suggests that federal law will preempt a plaintiff's 451.001 claim if the plaintiff uses the collective bargaining agreement as a sword to establish his case.  *See Thomas*, 39 F.3d at 621; *Medrano*, 985 F.2d at 233-34; *see also West v. Fina Oil & Chem. Co.*, 128 F. Supp. 2d 396, 401 (E.D. Tex. 2001) (holding that federal law did not preempt plaintiff's claim because "there is no evidence before the court at this time that would show that Plaintiff is relying on the [collective bargaining agreement] to support his retaliatory discharge claim"); *Johnson v. Alcatel Network Sys., Inc.*, 963 F. Supp. 599, 604 (N.D. Tex. 1996) (holding federal law preempted plaintiff's retaliatory discharge claim because "interpretation of the collective bargaining agreement was the basis for her" lawsuit).  The rationale is that by invoking the collective bargaining agreement to support his case, the plaintiff forces the court to interpret the collective bargaining agreement, and thus the collective bargaining agreement is inextricably intertwined with plaintiff's retaliatory discharge claim.  *See Thomas*, 39 F.3d at 621; *Medrano*, 985 F.2d at 233-34.

*Medrano* provides an example of a retaliatory discharge claim that was inextricably intertwined with the collective bargaining agreement because the plaintiff relied on the collective bargaining agreement to support his case.  *See Medrano*, 985 F.2d at 233-34.  At trial, the plaintiff in *Medrano* presented evidence that the collective bargaining agreement contained a provision stating that an employee loses his seniority if the employee enters into a full settlement with his employer "for a disability that the Company cannot accommodate."  *Id.* at 231-32 & n.1.  The plaintiff then presented evidence that the employer fired employees like the plaintiff who had settled, but did not fire employees who refused to settle.  *See id.* at 233-34.  Plaintiff thus

argued that the collective bargaining agreement policy itself violated section 451.001 because a workers' compensation settlement stripped the employee of his seniority and thus allowed the employer to fire the employee. *See id.* Because Plaintiff used the collective bargaining agreement as a sword to establish his case, the Fifth Circuit explained that the trial court would have to interpret the collective bargaining agreement, and thus federal law preempted plaintiff's claim. *See id.*

The *Thomas* case is similar. In that case, the plaintiff had a history of absenteeism. *Thomas*, 39 F.3d at 614. To counter his absenteeism, the plaintiff, his union representative, and his employer entered into a special agreement that plaintiff would not miss more than 4% of his scheduled work days. *Id.* The plaintiff then later suffered an on-the-job injury and received workers' compensation. *See id.* While he was out of work because of his injury, his employer fired him because he had exceeded the 4% rule. *See id.* at 614-15. Plaintiff then sued for retaliatory discharge under section 451.001. *See id.* at 615. Plaintiff stated in his deposition that the 4% absentee provision violated section 451.001. *Id.* at 621. And critically, Plaintiff never stated any other basis for his claim under 451.001 even though he was given the opportunity. *Id.* Because the plaintiff was using an agreement similar to a collective bargaining agreement as the basis of his lawsuit, the Fifth Circuit held that *Medrano* controlled and federal law preempted plaintiff's claim. *Id.* at 618-19, 621.

As explained below, Plaintiff's retaliatory discharge claim in this case is not inextricably intertwined with interpreting the CBA. The heart of Plaintiff's case is that Defendant fired him in retaliation for filing a workers' compensation claim. Compl. 4. Plaintiff has submitted evidence that his supervisor complained to him about the amount the company was spending on

his medical bills and other expenses. Dep. 103:3-104:22, 122:23-123:8, 158:1-159:4; 173:18-174:1. Plaintiff thus argues that Defendant retaliated against him in violation of section 451.001 without ever referencing the CBA. *See id.*; Compl. 3-4. Because Plaintiff does not use the CBA as a sword, the trial court will not need to interpret the CBA for Plaintiff to prove his case just like in the *Lingle*, *Roadway I*, and *Trevino* cases.

      This conclusion is supported by the fact that Plaintiff does not need to reference the CBA to establish the elements of a retaliatory discharge claim under section 451.001. As stated above, the elements of a section 451.001 retaliatory discharge cause claim are: (1) an employee; (2) is discharged or discriminated against in any manner; (3) because the employee has filed a workers' compensation claim in good faith; and (4) that but for the employee's filing of a workers' compensation claim, the discharge or discrimination would not have occurred when it did. *See* Tex. Lab. Code Ann. § 451.001; *Reid*, 805 F. Supp. 2d at 336 (quoting *Willis*, 282 S.W.3d at 543). Plaintiff does not need the CBA to establish he was an employee, that Defendant discharged him, that he filed a workers' compensation claim in good faith, or to establish causation. The crux of this case is going to be whether Defendant retaliated against Plaintiff for filing his workers' compensation claim. And that issue is separate from the CBA. Whether the CBA justifies the firing of Plaintiff is largely irrelevant to whether Defendant retaliated; both could be true — i.e. Defendant could have fired Plaintiff in violation of 451.001 even if the CBA justified the firing. *See Roadway II*, 936 F.2d at 792 ("[F]ederal law would not preempt [Plaintiff's retaliatory discharge] claim even if [Defendant] had just cause under the CBA for dismissing [Plaintiff], if it also had a motive for dismissing him that was illegal."); *Willis*, 282 S.W.3d at 544 (The workers' compensation claim also need not be the sole cause of the

termination.").

Defendant attempts to rebut this analysis by arguing that Plaintiff invoked the CBA in his deposition and is thus relying on the CBA to establish a retaliatory discharge claim. Resp. 5. Defendant thus argues that this case is similar to *Medrano* and *Thomas* because Plaintiff's claim and the CBA are inextricably intertwined. Resp. 6.[2] This argument fails for several reasons.

First, Defendant's argument is factually misleading. Although Plaintiff technically mentioned the CBA, Defendant set him up to do so. For the first five hours or so of the deposition, Plaintiff never mentioned the CBA. *See* Dep. 4:3, 185:24, 204:5, 214:15. In those five hours, Plaintiff repeatedly stated that basis of his lawsuit was the alleged retaliation for filing the workers' compensation claim and the associated medical expenses. *See* Dep. 103:3-104:22, 122:23-123:8, 158:1-159:4; 173:18-174:1. Plaintiff only mentioned the CBA after Defendant's lawyer handed Plaintiff a copy of the CBA and had Plaintiff read the section about discharges for "offenses of extreme seriousness." Dep. 203:20-206:6. Then, Defendant's lawyer asked Plaintiff whether "[a]s part of your lawsuit, Mr. Delgado, are you claiming that UPS didn't comply with

---

[2] Defendant also cites *Bagby v. Gen. Motors Corp.*, 976 F.2d 919 (5th Cir. 1992) in support. Resp. 5-6. The Court finds the *Bagby* case largely irrelevant to this case because the plaintiff in *Bagby* did not present a section 451.001 retaliatory discharge claim, but instead sued for defamation and intentional infliction of emotional distress ("IIED"). *Bagby*, 976 F.2d at 920. These claims have different elements and thus require a different analysis by the court. *See Roadway II*, 936 F.2d at 792 (distinguishing an IIED case from a retaliatory discharge claim). Moreover, unlike in a retaliatory discharge case, the court in a defamation or IIED case often must examine the CBA to determine the reasonableness of the employer's actions. *See Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir. 1997). The realm of reasonableness as defined by the CBA is generally not at issue in a retaliatory discharge claim. *See Jones v. Allied Waste Services*, 2001 WL 276930, at *4-5 (N.D. Tex. 2001) (finding preemption of IIED claim but not retaliatory discharge claim). Accordingly, the Court does not find *Bagby* case helpful in resolving the issue of preemption in this case.

or violated this article 6 provision of the CBA?" Dep. 208:3-5.  Plaintiff answered "yes."  Dep. 208:7.  Thus, the transcript shows that Plaintiff did discuss the CBA, but not until Defendant prompted and indirectly encouraged Plaintiff to do so.  Accordingly, Plaintiff did not "invoke the CBA," and the deposition does not suggest that Plaintiff is relying on the CBA to establish his retaliatory discharge claim.

Second, this case is not similar to either *Medrano* or *Thomas*.  In *Medrano*, the plaintiff presented evidence that the collective bargaining agreement itself violated section 451.001.  *Medrano*, 985 F.2d at 233.  And this made sense because the specific provision of the collective bargaining agreement at issue in *Medrano* dealt with workers' compensation claims.  *See id.* at 231 & n.1.  In contrast here, UPS's compliance or non-compliance with the CBA revolves around whether the accident was of "extreme seriousness."  Resp. 1.  On its face, this has nothing to do with workers' compensation.  Moreover, Plaintiff has never suggested the CBA itself violates section 451.001, as did the plaintiff in *Medrano*.

*Thomas* also differs from this case.  In *Thomas*, the plaintiff invoked a quasi collective bargaining agreement as the basis of his lawsuit, and in his deposition never provided a different rationale or theory for his lawsuit.  *Thomas*, 39 F.3d at 621.  In contrast here, Plaintiff repeatedly stated in his deposition that the basis of his claim was that Defendant retaliated against him for filing a workers' compensation claim — i.e. Defendant fired him because of the cost of his medical expenses.  Dep. 103:3-104:22, 122:23-123:8, 158:1-159:4; 173:18-174:1; *see also* Compl. 3-4 (never mentioning the CBA).  As explained above, Plaintiff only mentioned the CBA after Defendant's lawyer encouraged him to do so.  In sum, *Thomas* is not sufficiently analogous to this case.

Defendant additionally argues that Plaintiff's claim must be inextricably intertwined with consideration of the CBA because the trial court will eventually have to answer the following questions:

> (1) what is an "offense of extreme seriousness?"; (2) who determines if an offense is one of "extreme seriousness?"; and (3) if an offense is determined to be one of "extreme seriousness," what rights are afforded UPS, the Teamsters Union, and Delgado?

Resp. 6

But aside from Defendant's conclusory statements, nothing suggests that the trial court will have to make these determinations. Plaintiff's theory of the case is that Defendant fired Plaintiff in retaliation regardless of whether the accident was of "extreme seriousness." *See* Mot. 9; Compl. 4. Thus, when examining Plaintiff's case, the trial court will not need to determine whether the accident fits the definition of "extreme seriousness," nor concern itself with who determines whether an offense is one of "extreme seriousness," nor examine what rights the CBA affords based on Plaintiff's allegations. The fact finder will only need to determine whether Defendant fired Plaintiff in retaliation for his workers' compensation claim. Just like in *Lingle* and *Trevino*, the critical question will be the motivation of the employer and that does not require the "court to interpret any term of a collective-bargaining agreement." *See Lingle*, 486 U.S. at 407; *Trevino*, 197 F.3d at 781.

Perhaps Defendant is suggesting that it intends to use the CBA as a defense — i.e. the CBA provision justifies the firing of Plaintiff because the accident was of "extreme seriousness." This is a proper defense to a retaliatory discharge claim under section 451.001. *See Lingle*, 486 U.S. at 407 (noting a possible defense in its analysis of whether § 301 preempted the plaintiff's retaliatory discharge claim); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex.

15

1996) (noting a defendant can offer a different explanation for the firing to defend against a retaliatory discharge claim under section 451.001).

But using the CBA as a defense does not necessarily make the retaliatory discharge claim inextricably intertwined with the CBA. *See Roadway II*, 936 F.2d at 791-92; *Roadway I*, 931 F.2d at 1090; *Williams*, 582 F.3d at 879 & n.13. The Fifth Circuit does "not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility" of its arguments. *Roadway I*, 931 F.2d at 1090. Moreover, as explained above, even if Defendant is able to establish that the CBA justified the firing, Plaintiff could still prevail if he shows that Defendant also retaliated against him for filing the workers' compensation claim. *See Roadway I*, 931 F.2d at 1090; *Willis*, 282 S.W.3d at 544. In sum, Defendant's invocation of the CBA as a defense is not enough to establish preemption. *See Roadway II*, 936 F.2d at 791-92; *Roadway I*, 931 F.2d at 1090; *Williams*, 582 F.3d at 879 & n.13.

Finally, Defendant argues that the CBA is the "the lynchpin of [Plaintiff's] claim. If Delgado's July 24, 2008, accident was found not to be an 'offense of extreme seriousness,' and he received a lesser disciplinary action, this lawsuit would not be pending at this time." Resp. 5. It is certainly true that if Defendant had not fired Plaintiff, this lawsuit would likely not be pending. But that does not make the CBA "inextricably intertwined" with Plaintiff's retaliatory discharge claim. Rather, this is just a factual predicate to the lawsuit in the same way that Plaintiff's hiring is a factual predicate to the lawsuit. After all, if Defendant never hired Plaintiff, then "this lawsuit would not be pending at this time." Surely, Defendant is not suggesting that the Court has to interpret and examine Defendant's hiring policies and procedures. Moreover, as explained above, even if Defendant terminated Plaintiff because he was involved in an offense of

"extreme seriousness," Defendant could still be liable if it also terminated him in retaliation for filing his workers' compensation claim. *See Roadway I*, 931 F.2d at 1090. So, the CBA is not the lynchpin of Plaintiff's claim.

In summary, the Court holds that Plaintiff's retaliatory discharge claim under section 451.001 is not inextricably intertwined with consideration of the CBA because Plaintiff has not invoked the CBA to satisfy any of the elements of his claim. Accordingly, Defendant has not met its burden to show that § 301 of the LMRA preempts Plaintiff's retaliatory discharge claim, and has not met his burden to show the existence of this Court's removal jurisdiction.

### 3. Remand

Given that the Defendant has not shown preemption, 28 U.S.C. § 1445 mandates that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). Therefore, the Court holds that remand to state court is appropriate in this case. *See Trevino*, 197 F.3d at 781-82.

### C. Attorney's Fees

In his Motion, Plaintiff requests the Court award attorney's fees under 28 U.S.C. § 1447(c). Mot. 1, 10. Plaintiff argues that this was a "'what have we got to lose?' removal that from the outset had no basis in law or fact, but was done to delay the state court proceeding, impose unnecessary costs on the Plaintiff, and gain a tactical advantage after the case is remanded." Pl.'s Reply in Supp. of Mot. to Remand 4, ECF No. 4.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." 28

U.S.C. § 1447(c). Under § 1447(c), the court has discretion in awarding fees. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). However, the court should not award attorney's fees when the removing party has an objectively reasonable basis for removal. *Id.*; *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009).

Although Defendant has failed to meet its burden establishing jurisdiction, removal was not objectively unreasonable. As stated above, determining whether federal law preempts a retaliatory discharge claim under section 451.001 is a fact-specific analysis. *See Thomas*, 39 F.3d at 621; *Medrano*, 985 F.2d at 233-34; *West*, 128 F. Supp. 2d at 401; *Johnson*, 963 F. Supp. at 604. Defendant thus had a reasonable, albeit losing argument, that this case was similar to *Medrano* and *Thomas*. Therefore, the Court **DENIES** Plaintiff's request for attorney's fees and costs.

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion (ECF No. 2). As requested in the Motion, the Court **REMANDS** this case back to the 34th Judicial District Court, El Paso County, Texas. However, the Court **DENIES** Plaintiff's request for attorney's fees and costs.

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 7th day of March, 2012.

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE